UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DR PEPPER/SEVEN UP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No._____ |
| | § | |
| DR PEPPER BOTTLING COMPANY | § | |
| OF DUBLIN, TEXAS | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF DR PEPPER/SEVEN UP, INC.'S COMPLAINT
AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIONS**

Plaintiff Dr Pepper/Seven Up, Inc. ("Dr Pepper") files this complaint against Defendant Dr Pepper Bottling Company of Dublin, Texas ("Defendant"), and alleges as follows:

**NATURE OF THE ACTION**

1.      This is a lawsuit to stop a licensed Dr Pepper bottler from violating its obligations to bottle and sell DR PEPPER brand soft drinks only as specified by the parties' written license agreement and only in its territory.  Despite repeated requests that Defendant stop conduct that violates the parties' license agreement and applicable trademark law, Defendant continues to ignore Plaintiff's demands for compliance and has attempted to willfully usurp Dr Pepper's exclusive trademark rights for its own financial gain.  In doing so, Defendant harms Plaintiff and Plaintiff's other bottlers around the nation who count on Plaintiff to protect their territories from unlawful sales and shipment into their territory by Defendant.  In doing so, Defendant also harms the DR PEPPER brand.[1]

---

[1] As used in this Complaint, DR PEPPER and DR PEPPER Mark and DR PEPPER Marks refer to any word, name, symbol, or device that incorporates DR PEPPER, 10-2-4, or any other trademark or service mark registered or used over time by Plaintiff or its predecessors, affiliates, or licensees in connection with its business or products.

2.      Plaintiff Dr Pepper/Seven Up, Inc. owns the DR PEPPER brand and trademarks and allows their use by bottlers within their territories around the United States under strict written license agreements.  DR PEPPER is the oldest and one of the most famous major soft drink brands and trademarks in the United States.  Beginning in 1885, Plaintiff's predecessor invented and sold DR PEPPER at the Old Corner Drugstore in Waco, Texas.  Dr Pepper has been sold in the Waco, Texas area since that time.  Today, the historic Dr Pepper Museum is listed on the National Register of Historic Places.  Since its formulation, Plaintiff and its predecessors have worked to promote and develop brand DR PEPPER as one of the most loved soft drinks in the United States.  Today, Plaintiff makes its home in Plano, Collin County, Texas, where it continues its efforts to promote, expand, refresh, and market brand DR PEPPER and its trademarks.

3.      Under the terms of the license agreements, licensed bottlers are given the right to purchase DR PEPPER concentrate from Plaintiff.  Using the licensed concentrate, bottlers are then allowed to make and sell DR PEPPER beverages using approved bottles and cans and labeled with authorized trademarks and logos.  Bottlers who fail to comply with the license agreements may harm Plaintiff's brand and its trademarks by creating confusion as to the quality, source, and origin of the brand and its trademarks and creating the potential for erosion of the trademark and brand recognition, loyalty, and value.

4.      Defendant is one of Plaintiff's licensed bottlers for portions of six central Texas counties.  Defendant's license grants it the exclusive right to sell and distribute DR PEPPER beverages in bottles, cans, and pre-mix containers in Comanche county in central Texas and portions of five other central Texas counties—Eastland, Erath (including the town of Dublin,

Texas), Hood, Hamilton, and Bosque—all of which are known as its "Territory."  Defendant's license also grants it a non-exclusive license to manufacture DR PEPPER in the Territory.

5.      At all times, Defendant and those individuals and entities who preceded it in the Territory have sold the DR PEPPER products pursuant to various license agreements with Plaintiff or its predecessors.  Today, the parties' relationship is expressly and wholly governed by a written, 2009 license agreement that Defendant signed on June 6, 2009 in Plano, Collin County, Texas (the "License Agreement").  The License Agreement controls the parties' mutual contractual promises to each other and governs and controls Defendant's operations including how Defendant may produce DR PEPPER products, how it may use the DR PEPPER trademark and logos, and the limited six Texas counties where it may lawfully sell DR PEPPER beverages.

6.      Whatever rights Defendant now has to bottle and sell DR PEPPER products derive from the parties' 2009 License Agreement.  Despite Defendant's claims to its history as the oldest independent bottler of DR PEPPER, Defendant is and has always been obligated to follow and abide by the parties' contract.  The 2009 License Agreement allows Defendant to purchase concentrate from Plaintiff, to mix the concentrate with additional ingredients, and to sell the resulting beverage in its six permitted counties.  The License Agreement allows Defendant to take the purchased DR PEPPER concentrate and add cane sugar as sweetener. Indeed, bottlers in which Plaintiff has an ownership interest have long offered DR PEPPER with cane sugar as one permitted formulation of DR PEPPER.  Defendant, too, has used this permitted formulation.

7.      Using the approved cane sugar formulation made by certain of Plaintiff's bottlers, Defendant has attempted to capitalize on its representations as the successor to the oldest

independent bottler of DR PEPPER through a modified label that violates the parties' License Agreement and applicable trademark law.

8.     As the licensor, Plaintiff has the right to control its trademarks and related logos and graphics.  Indeed, as Licensor, only Plaintiff has the right to allow temporary modifications to its approved logos and graphics. And, as Licensor, Plaintiff has the right to disapprove suggested changes.  Finally, as Licensor, only Plaintiff has the right to demand that bottlers conform to its then-current trademarks, logos, and graphics even if Plaintiff has previously approved of changes or alterations.   The parties' License Agreement is express in granting Plaintiff this power to police and protect its name, trademarks, logos, and graphics and includes a no-waiver clause to protect from any claims otherwise.

9.     Despite recent and repeated requests that Defendant stop, Defendant has persisted in marking the products it sells with the illegitimate designation, "Dublin Dr Pepper."  Defendant has taken the DR PEPPER approved trademarks, graphics and logos and inserted the word "Dublin" at or in conjunction with DR PEPPER in an effort to create a modified mark.   In attempting to trade under the phrase, "Dublin Dr Pepper," Defendant is suggesting that it is different or set apart from DR PEPPER.  Despite suggestions to the contrary, the DR PEPPER beverage that Defendant sells is the same DR PEPPER with cane sugar available from other bottlers.  Indeed, the License Agreement requires that Defendant make it "in strict accordance with the instructions and formula" provided by Plaintiff.  Defendant has done nothing to change the recipe (indeed, it is not allowed to).[2]  Its effort to recast, set apart, or even re-brand the DR PEPPER product it sells creates confusion and dilutes the value of the DR PEPPER

---

[2]  License Agreement ¶ 20.  Defendant is not the only bottler that produces DR PEPPER soft drinks sweetened with cane sugar.  Dr Pepper provides the recipe for this, just as it does for bottlers who sweeten their DR PEPPER soft drinks with high fructose corn syrup.  Furthermore, if Defendant has modified the product, Defendant would also be in violation of the License Agreement and the restrictions on use of the Dr Pepper Marks.

trademark and brand name, deceives the public, and promotes a false distinction.   Moreover,

Defendant has persisted in suggesting to the public that the "Dublin Dr Pepper" is bottled in

Dublin, Texas, when it is produced under contract by a different bottler in Temple, Texas and

then resold by Defendant using a "Dublin Dr Pepper" logo.   By using a label that creates a

distinction for "Dublin" Dr Pepper, even if not made there, Defendant misleads consumers to

believe that the famous DR PEPPER beverage is somehow different than the cane sugar versions

that other Dr Pepper bottlers manufacture and/or sell.   Defendant, a licensed bottling company, is

not authorized to use Plaintiff's own trademark in a manner or form that is likely to cause

dilution of, confusion with, or harm to Plaintiff, its marks, goodwill or business reputation.

10.     To make matters worse, Defendant is using its self-styled, eponymous logo to sell

outside of its six central Texas counties.   Using the "Dublin Dr Pepper" logo, Defendant is

selling across the United States from New York to California, throughout Texas, and in Plano,

Collin County, Texas, through solicitations on its website, a toll-free number, its Facebook page,

and to restaurants and retailers.   This conduct directly violates the License Agreement's

prohibitions on sales outside of the six counties and infringes the rights of Plaintiff and its

licensed bottlers whose sales are diminished by Defendant's unlawful shipments.   Licensed

Dr Pepper bottling companies (including Defendant) are generally each given exclusive rights to

sell within a limited geographic region, which allows the bottler to invest resources in the sale

and promotion of DR PEPPER within its region without having to distinguish itself from and

compete with other bottlers.   Defendant has benefitted from this system, and in fact, its

predecessor entities or individuals previously urged Plaintiff to stop other bottlers from selling

within its territory (and Plaintiff complied).   Now, despite repeated requests to cease, Defendant

is selling DR PEPPER under the infringing "Dublin Dr Pepper" label in multiple territories not its own, in competition with other bottlers and in clear violation of the License Agreement.

11.     Also despite repeated requests to cease, Defendant sells clothing and other merchandise bearing the DR PEPPER Mark and "Dublin Dr Pepper" label without prior written authorization.   Defendant has even allowed third parties to make merchandise using the DR PEPPER Mark, which Defendant then resells through its website.   Through these actions, Defendant has denied Plaintiff its right and obligation to inspect and approve the types, designs, and quality of products sold under the DR PEPPER Mark.   Also through these actions, Defendant has denied Plaintiff's unencumbered right to license the DR PEPPER mark as it sees fit and appropriate to potential licensees under a royalty-producing license agreement.   For example, Defendant even advertises that it has granted the "exclusive" right to make and sell a DR PEPPER likeness to a third party jewelry manufacturer.

12.     In light of Defendant's multiple breaches of trademark law and the parties' License Agreement, Plaintiff asks this Court to order Defendant to cease using any altered version of the DR PEPPER trademark, cease selling products bearing the DR PEPPER Mark that are not authorized by Dr Pepper, and cease selling and shipping DR PEPPER products outside its six county territory.   Plaintiff also asks this Court to issue a declaratory judgment that Defendant has violated the parties' License Agreement in multiple respects and that based on Defendant's violations of the License Agreement, the Agreement is terminable at Plaintiff's option, and that, because Plaintiff is the exclusive owner of the DR PEPPER Mark, Defendant cannot create and has no rights in the DUBLIN DR PEPPER logo or the alleged mark "Dublin Dr Pepper."

## PARTIES

13.     Plaintiff Dr Pepper/Seven Up, Inc. is a Delaware corporation located in and doing business at 5301 Legacy Drive, Plano, Texas 75024.  Dr Pepper/Seven Up, Inc. is the owner of numerous federal trademark registrations for the DR PEPPER Mark in the United States. Additionally, after merging with Dr Pepper Company on January 1, 2010, Dr Pepper/Seven Up, Inc. became the owner of the DR PEPPER Mark and licensor under the License Agreement with Defendant.

14.     Defendant is a Texas corporation with a principal place of business at 221 South Patrick Street, Dublin, Texas 76446.  Defendant is the licensee under the License Agreement between it and Dr Pepper.  Defendant may be served through its registered agent, Jim Mulloy, 221 South Patrick, Dublin, Texas 76446.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121, under 28 U.S.C. §§ 1331, 1338(a) & (b), and under principles of pendent jurisdiction.  Supplemental jurisdiction exists over state law claims pursuant to 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over Defendant because Defendant resides in this State; continuously and systematically conducts, transacts, and solicits business in this State; is committing tortious acts within this State by, among other things, using infringing marks in connection with its bottling and distribution of DR PEPPER products; has caused injury to Plaintiff within this State; and the events giving rise to this Complaint have occurred in this State and had effects in the State and District.

17.     Venue is proper under 28 U.S.C. § 1391(a)&(c) because Defendant has contacts with this district that would be sufficient to establish personal jurisdiction if this District were a

separate state.    Specifically, as pleaded throughout this Complaint and shown in the accompanying exhibits, Defendant entered into its License Agreement with Dr Pepper in Plano, Texas, has conducted business meetings at Dr Pepper's Plano, Texas headquarters, makes payments to Dr Pepper in Plano, Texas, and wrongfully sells and ships its infringing products into Collin County, Texas and into the Eastern District of Texas, outside of Defendant's lawful, limited distribution area.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

**A.    THE DR PEPPER MARK**

18.    DR PEPPER is one of the most famous beverage brands in the United States and is the No. 2 flavored (i.e., non-cola) carbonated soft drink in the United States.

19.    Dr Pepper has long presented the DR PEPPER Mark in the distinctive oval logo form shown below:



20.    Through a substantial investment of time, effort and money, continuous use and advertising for many years, and based on its success, history, current sales volume, and manifold other factors, the DR PEPPER Mark is a famous trademark, trade name and collection of logos and one of the most famous marks in the United States.    The DR PEPPER Mark has come to identify Dr Pepper's goods exclusively and to represent enormous and valuable goodwill.

21.     DR PEPPER is sold in half of the 600,000 commercial outlets that sell fountain drinks in the United States.   In those outlets, DR PEPPER is ordered more than any other flavored carbonated soft drink.   In one simple measure of that success, more than 9.8 million people have become fans of DR PEPPER on Facebook, earning DR PEPPER a top-10 spot among food and beverage brands on the social networking site.

22.     Consistent with the terms of the bottler license agreements and its manufacturing specifications and standards, DR PEPPER beverages may be sweetened with cane sugar or high fructose corn syrup, also known as corn sugar.   All are of the high quality represented by the DR PEPPER brand.   Defendant is one (but not the only) bottler that produces and sells DR PEPPER soft drinks sweetened with cane sugar.   All DR PEPPER bottlers promise as part of their written license agreements to produce DR PEPPER according to Plaintiff's exact specifications.   Plaintiff believes Defendant produces its DR PEPPER beverages with cane sugar using Plaintiff's exact specifications including the specifications for DR PEPPER with cane sugar.   Thus, nothing is unique or different about the DR PEPPER produced by Defendant as compared to Plaintiff's other bottlers who produce and sell DR PEPPER with cane sugar.   Indeed, any bottler producing DR PEPPER outside of specifications is subject to termination of its license agreement.   This control over specifications and formula is essential to preservation of quality of the brand beverage consumers have come to enjoy and expect from Plaintiff.   This control over specifications and formula enhances the overall value of the trademark DR PEPPER and creates a cohesive and authentic beverage wherever DR PEPPER is sold.

23.     Plaintiff owns federal registrations for the DR PEPPER Mark, including (among others) the following:

| Mark | U.S. Reg. No. (Filing Date) | 1st Use in Commerce | Goods/Services |
|------|------|------|------|
| DR PEPPER (stylized word mark) | 50,668 (6/24/1905) | 1890 | Aerated tonic beverages and syrups for the same |
| DR PEPPER (typed drawing) | 3,044,406 (10/17/2003) | December 31, 1890 | Non-alcoholic beverages, namely, soft drinks and syrups for the preparation of same |
| 10 2 4 (design plus numbers) | 418,485 (7/10/1945) | December 1, 1927 | Nonalcoholic, maltless beverages sold as soft drinks, and syrups for making the same |
| DR PEPPER (stylized word mark) | 2,975,776 (10/23/2003) | July 31, 1976 | Non-alcoholic beverages, namely, soft drinks and syrups for the preparation of same |
| I'M A PEPPER | 3,353,310 (11/18/2004) | April 25, 1978 | Clothing, namely, shirts, tops, t-shirts, hats, headwear, jackets, socks, pants, pajamas, loungewear, and footwear |
| DR PEPPER & Design | 2,230,689 (2/23/1998) | January 1997 | Soft drinks and syrups and concentrates for making the same |
| DR PEPPER | 3,041,817 (6/7/2005) | August 31, 2004 | Clothing, namely tops, t-shirts, pants and loungewear, headwear, jackets and footwear |

Copies of U.S. Patent and Trademark online records showing the title and status of the foregoing registrations are attached hereto at **Exhibit A**.

24.     All of the foregoing registrations are valid, subsisting, and in full force and effect, and constitute evidence of the validity of the registered marks, of Plaintiff's ownership of the marks, and of Plaintiff's exclusive right to use the marks in commerce on or in connection with the identified goods and services pursuant to Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b).  All of the registrations shown in the foregoing table have become incontestable and

therefore constitute conclusive evidence of such validity, ownership and exclusive rights pursuant to Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

26.     Defendant has at all relevant times had a license agreement for specific permitted uses of the DR PEPPER Mark.  Defendant had actual knowledge of the DR PEPPER Mark, and expressly acknowledged Dr Pepper's prior use and/or ownership of such marks in connection with soft drinks and clothing.  Defendant had such knowledge at least by virtue of the License Agreement, and has been on constructive notice of the DR PEPPER Mark, and of Plaintiffs' prior use of such marks in connection with soft drinks and clothing items, by virtue of Dr Pepper's federal trademark registrations.  *See* 15 U.S.C. §§ 1057(c), 1072.

26.     As provided under the parties' 2009 License Agreement, Plaintiff, from time to time, updates, refines, and refreshes its DR PEPPER Marks.  When this happens, Plaintiff must ensure that all of its bottlers consistently use the revised DR PEPPER Marks.  By keeping the DR PEPPER Marks consistent, updated, and enforced across its approved bottlers, Plaintiff maintains the strength of the DR PEPPER Marks while setting a standard of authenticity and integrity that consumers expect.

**B.      DEFENDANT'S VIOLATIONS OF THE LICENSE AGREEMENT**

27.     Pursuant to the License Agreement, effective as of June 8, 2009, Defendant was granted a limited license to manufacture, sell and distribute DR PEPPER soft drink in bottles, cans and pre-mix containers under the famous DR PEPPER Mark, within a limited six-county territory defined in the License Agreement.

28.     Defendant, however, has refused repeated, recent requests to conform its conduct to the promises it made in the 2009 License Agreement.  Instead, Defendant is acting outside of its promises in the 2009 License Agreement and is attempting to redirect consumers for its

personal economic gain to the detriment of Plaintiff and Plaintiff's other bottlers in the following respects:

**1.      Use of Unauthorized and Altered Form of the DR PEPPER Mark**

29.      The License Agreement sets the parties' mutual promises in writing. "Dr Pepper Trademarked Products" are the soft drink beverage in "those distinctive bottles, cans and pre-mix containers as may be approved from time to time by Licensor [i.e., Dr Pepper] and none other."

30.      Paragraph 8 of the License Agreement requires of the Defendant the following:

Licensee [i.e., Defendant] agrees diligently to emphasize the sale and use of Dr Pepper with the purpose of making Dr Pepper a leading drink; and to use the distinctive, authorized Dr Pepper trademarked bottles, cans, crowns and cartons, as approved by Licensor [i.e., Dr Pepper], for Dr Pepper Trademarked Products only; and to use the distinctive, authorized Dr Pepper trademarked cases in the sale and distribution of Dr Pepper. Licensee agrees and obligates himself to identify delivery trucks, auto equipment, his plant and uniforms used by Licensee prominently with Dr Pepper approved trademark identification.

31.      Paragraph 20 of the License Agreement limits the Defendant's conduct as follows:

This Agreement is not intended to, nor shall it be construed, to give Licensee [i.e., Defendant] any right, title or interest in any of the trademarks, trade names, secret formula, advertising slogans or copyrighted materials belonging to Licensor [i.e., Dr Pepper], but only gives the Licensee the right to use any such trademarks, trade names, advertising matter or copyrighted matter as a licensee, and then only to the extent and in the manner, time and places permitted herein and subject to all of the terms and conditions hereof, and only for so long as this Agreement remains in effect. This Agreement shall not in any way be construed to interfere with or limit the use of said Dr Pepper trademarks, trade names, slogans, labels, copyrighted material or advertising matter by the Licensor or Licensor's other licensees or appointees in said territory or in any other territory, or by other duly licensed Dr Pepper bottlers in other territories or by the Licensor or its vendees and privies in the Dr Pepper post-mix business anywhere, including all Licensor's vendees and privies in the sale of fountain vending syrup and in fountain trade business anywhere, even in

the said licensed territory.  It being understood that the privilege given Licensee herein is confined only to those certain Dr Pepper Trademarked Products in bottles and cans and pre-mix containers as are set forth and described in <u>Exhibit "B"</u> attached hereto and made a part hereof, and is confined to the territory described in <u>Exhibit "A"</u>.

32.    Notwithstanding the clear terms of the License Agreement that sets forth the parameters of permissible use of the DR PEPPER Mark, and Plaintiff's repeated warnings to Defendant to cease its modification of the DR PEPPER Mark, Defendant has persisted in using an unauthorized altered form of the DR PEPPER Mark that creates a geographic distinction between and among Plaintiff and Plaintiff's approved bottlers and that seeks to wrongfully and unlawfully capitalize on this distinction by shipping products outside of its lawful, limited six county territory.  While for some periods of time, it may be appropriate for Plaintiff to allow a specific bottler to offer a varied logo or graphic, the License Agreement grants Plaintiff appropriately broad powers to enforce the DR PEPPER Mark and insist on conformance and authenticity.

33.    Despite what it promised in their License Agreement to the contrary, Defendant has refused to conform its logos and graphics to the now-current Plaintiff-approved DR PEPPER Mark and associated logos and graphics.  Instead, Defendant insists on continuing to use an altered form to create a geographic distinction—"Dublin Dr Pepper" —and to sell it outside of its Territory.  Defendant's refusal and broken contractual promises include using the following logo presentations, each of which violate the DR PEPPER Mark (individually and/or collectively, a "Dublin DR PEPPER Logo"):









34.     The parties' License Agreement grants Plaintiff the right to control and approve all of the DR PEPPER Marks and any and all variations of logos and graphics and to rescind and change its prior approval of any limited variations of logos and graphic.   Plaintiff has communicated to Defendant on multiple occasions both before and since the signing of the 2009 License Agreement that it does not currently approve of any logo or graphic that includes "Dublin" in conjunction with DR PEPPER.

35.     Despite this rejection of Defendant's modified graphics, Defendant has been selling and offering for sale bottles of DR PEPPER soft drink that have labels bearing the unauthorized DUBLIN DR PEPPER Logo and doing so outside its Territory.  *See* **Exhibit B**.

36.     Defendant prominently features the unauthorized DUBLIN DR PEPPER Logo on its website.  See **Exhibit B.**

37.     Defendant also has been selling and offering for sale various merchandise bearing the unauthorized DUBLIN DR PEPPER Logo, including but not limited to t-shirts, mugs, koozies and magnets and doing so outside its territory through a toll-free number and internet website.  *See* **Exhibit B**.  Defendant has also authorized or allowed third parties to manufacture products with the DR PEPPER Mark without the authority to do so.

38.     Defendant's DUBLIN DR PEPPER Logo creates confusion that should not exist as to the DR PEPPER Mark and creates confusion for consumers and the public by suggesting a distinction that does not exist, and which has been authorized by Plaintiff, when that is not the case.  The beverage that Defendant distributes is "made in strict accordance with the instructions and formula" provided to Defendant by Plaintiff using concentrate purchased from Plaintiff, and Defendant has done nothing to change the recipe.[3]  Nor is the beverage produced at Defendant's Dublin plant—it is produced by another bottler located in Temple, Texas and sold by Defendant under the unauthorized logo.

39.     Dr Pepper does not approve of Defendant's use of the DUBLIN DR PEPPER Logo.  While Plaintiff has, at times, approved of certain logos proposed by Defendant or its predecessors, Plaintiff has maintained its authority under the License Agreement and as the owner of the DR PEPPER Mark to update, modify, enforce, and revoke any and all variations to the DR PEPPER Mark.   Plaintiff has made multiple, written demands that Defendant cease its use of the offending, unauthorized logos.  Moreover, Plaintiff has never authorized Defendant to use the Logo outside Defendant's limited territorial boundaries to violate the Plaintiff's policies on selling and shipping product into other bottler's contractual territories.

40.     The DUBLIN DR PEPPER Logo is not authorized under the License Agreement.

41.     Because the DUBLIN DR PEPPER Logo is not authorized, Defendant's use of the DUBLIN DR PEPPER Logo and of the designation, "Dublin Dr Pepper," is in breach of the License Agreement.

42.     Dr Pepper has placed Defendant on notice, orally and in writing, that Defendant's use of the DUBLIN DR PEPPER Logo and "Dublin Dr Pepper" is not authorized under the License Agreement and constitutes trademark infringement and dilution.

---

[3]  License Agreement ¶ 20.

43.     To further compound the problems with Defendant's conduct, Defendant sells its products labeled "Dublin Dr Pepper," but has the product produced by a different bottler in Temple, Texas, outside its territory. This act of promoting an image of sourcing product from a certain town (in this case, the town of Dublin, Texas) while bottling the product elsewhere further trades on the suggestion that "Dublin Dr Pepper" is somehow different from DR PEPPER and authorized by Plaintiff, when it is not.  To this end, Plaintiff has the right to control and police its licensee bottlers to conform the DR PEPPER Mark and to protect the authenticity and consistency of its trademarks.

**2.     Selling and Shipping DR PEPPER-Branded Products Outside the Six County Territory**

44.     Paragraph 9 of the License Agreement limits Defendants to sell and distribute DR PEPPER in the Territory:

> Licensee [i.e., Defendant] at all times agrees not to sell Dr Pepper Trademarked Products outside the said licensed territory and not to sell such product knowingly to any purchaser who intends to place such product for sale outside the said licensed territory, and to refrain from using or authorizing the use of Dr Pepper trademarked items or equipment for any purpose outside of his said Dr Pepper licensed territory; and to refrain from acquiring or using Dr Pepper marked bottles, cans or cases of other Dr Pepper bottlers without their consent.  If any Dr Pepper Trademarked Products manufactured or distributed by the Licensee are found outside of the territory as defined in Exhibit "A" (excluding any other geographic territory, if any, which is properly licensed to Licensee by Licensor [i.e., Dr Pepper] pursuant to another Dr Pepper license agreement) without the prior written approval of Licensor, then Licensee shall be deemed to have transshipped such Dr Pepper Trademarked Products and shall be deemed to be a "Transshipping Bottler."

45.     Exhibit A to the License Agreement describes in detail the Territory within which Defendant is permitted to sell certain DR PEPPER-branded soft-drink products under the License Agreement.  Defendant's license allows for bottling and sale of Dr Pepper in one county

in central Texas (Comanche) and portions of five other central Texas counties (express portions of Eastland, Erath (including the town of Dublin, Texas), Hood, Hamilton, and Bosque).

46.     One of the purposes for providing Dr Pepper bottlers with exclusive territorial boundaries is that it allows them to fully commit resources to the sale and promotion of DR PEPPER products within their territories without having to distinguish themselves from other Plaintiff licensed bottlers.  Defendant has availed itself of these protections and previously asked Plaintiff to stop other bottlers who were selling in the Territory (and Plaintiff complied).

47.     Defendant has sold and shipped DR PEPPER-branded products outside of the Territory as set forth in Exhibit A to the License Agreement.

48.     Defendant has sold and shipped DR PEPPER products into Collin County, Texas.

49.     Defendant has sold and shipped DR PEPPER products into the Eastern District of Texas.

50.     Defendant has sold and shipped DR PEPPER products in New York.

51.     Defendant has sold and shipped DR PEPPER products in California.

52.     Defendant has sold and shipped DR PEPPER products outside its licensed territory to wholesalers, retailers, and restaurants, as well as directly to individual consumers.

53.     Defendant's sales and shipments of DR PEPPER-branded products outside the licensed territory are in violation of the License Agreement, including but not limited to Paragraph 9 thereof.

54.     Plaintiff has placed Defendant on notice, orally and in writing, that Defendant's sales and shipment of DR PEPPER-branded products outside the licensed territory are not authorized under the License Agreement, constitute a violation of the License Agreement and trademark infringement.

3.      **Sales of Unauthorized Merchandise Bearing the DR PEPPER Mark**

55.      The License Agreement allows Defendant to sell Dr Pepper beverages in its Territory.

56.      The License Agreement does not grant to Defendant a license to sell merchandise with the DR PEPPER Mark.

57.      Paragraph 12 of the License Agreement further requires written approval before Defendant can promote or advertise anything using the DR PEPPER Mark.  Defendant is selling numerous licensed items that were not approved by Plaintiff.

58.      Defendant has sold and is selling unauthorized, unapproved merchandise bearing the DUBLIN DR PEPPER Logo or the DR PEPPER Mark through its website and at its retail store, including but not limited to jewelry, t-shirts, mugs, koozies, and magnets.  *See* **Exhibit B**. Defendant has not sought Plaintiff's prior written approval of any of these merchandise items.

59.      Defendant has sold and is selling unauthorized, unapproved merchandise with the DR PEPPER Mark, including but not limited to t-shirts at its store and on its website. *See* **Exhibit B**.  Defendant has not sought Plaintiff's prior written approval of any of these merchandise items.

60.      Defendant's sale of unauthorized, unapproved merchandise bearing the DR PEPPER Mark is in breach of the License Agreement, including but not limited to Paragraph 12 thereof.  By creating its own merchandise and selling it without authorization, Defendant places Plaintiff at risk in its licensing contracts with other vendors, diverts revenue rightfully belonging to Plaintiff, and creates inconsistency in the quality and authenticity of Plaintiff's properly and lawfully licensed products.  In short, the License Agreement preserves and protects Plaintiff's right and obligation to license its trademarks on merchandise in part to enjoy the

benefit of the trademarks' value and to protect the quality and authenticity of all merchandise that bears the trademark. Bottlers do not own that independent right and Plaintiff's network of bottlers count on Plaintiff to make sure that all licensed merchandise carries the quality, authenticity, and uniformity standards across the United States wherever DR PEPPER is sold. To allow a single bottler to act otherwise, hurts all of Plaintiff's other bottlers and puts them at a disadvantage to the bottler that acts outside the obligations of the License Agreement.

**C.     HARM CAUSED BY DEFENDANT'S UNLAWFUL CONDUCT**

61.     By continuing to modify the DR PEPPER Mark to falsely suggest that "Dublin" Dr Pepper is a unique or distinct product authorized by Plaintiff, Defendant causes harm to the authenticity and integrity of the DR PEPPER Mark, risks confusion of consumers to falsely believe that DUBLIN DR PEPPER beverages are somehow different from a version that Plaintiff's other bottlers sell, which they are not, and violates the parties' License Agreement.

62.     Defendant's activities are additionally likely to cause, and may have already caused, confusion and/or dilution of the famous DR PEPPER Mark by blurring its distinctiveness, integrity, and authenticity.

63.     Defendant's activities are further likely to cause, and may have already caused, consumers to falsely believe that the DUBLIN DR PEPPER Logo and the phrase "Dublin Dr Pepper" have been expressly licensed by Plaintiff for use in connection with DR PEPPER products.

64.     Defendant's activities are also likely to cause, and may have already caused, consumers to believe, falsely, that Defendant is a legitimate, authorized distributor of non-soft-drink merchandise and that the merchandise sold by Defendant has been inspected and approved by Plaintiff, which it has not. Defendant's activities also expose Plaintiff to complaints from

those manufacturers and consumers of the merchandise and others that Plaintiff has expressly permitted to license the DR PEPPER Mark.

65.     Defendant's activities are for the calculated purpose of exploiting and deriving a commercial benefit from the tremendous goodwill and recognition built up in the DR PEPPER Mark and reaping the benefits of years of effort and investment by Plaintiff that have led to great public recognition of the DR PEPPER Mark.

66.     Defendant is reaping benefits from its calculated plans by shipping and selling beverages and merchandise outside its territory to the harm of Plaintiff and Plaintiff's other DR PEPPER bottlers.

67.     Defendant's merchandising activities are designed to suggest a sponsorship by Plaintiff that does not exist, and to trade on the association and reputation of the DR PEPPER Mark to attract attention and consumers.

68.     Defendant's conduct is causing Plaintiff irreparable harm, for which there is no adequate remedy at law.

## CLAIMS AND CAUSES OF ACTION

69.     Each of the following Causes of Actions and Claims is based on and incorporate the preceding paragraphs by reference as if fully set forth herein.

## FIRST CLAIM FOR RELIEF –
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

70.     Defendant's unauthorized use of the DUBLIN DR PEPPER Logo and of the phrase "Dublin Dr Pepper" in connection with soft-drink products and other merchandise is likely to cause confusion or to cause mistake or to deceive consumers and the public. Consumers are likely to be misled into believing that Plaintiff sponsors or endorses the use of the word "Dublin" in connection with DR PEPPER soft drink.  In turn, consumers are likely to be

misled into believing that "Dublin" denotes a premium form of DR PEPPER, which it is not, or consumers are likely to be misled into believing that the word "Dublin" denotes a distinct flavor, variety or other line extension of DR PEPPER soft drink, especially because DR PEPPER is sold by other bottlers with cane sugar that is the same as that produced by Defendant.  Further, by suggesting or raising the inference that "Dublin" somehow creates a different taste or flavor, and that this inference is authorized by Plaintiff, Defendant risks the entirety of the DR PEPPER portfolio of flavors and varieties.

71.     Defendant's unauthorized use of the federally-registered DR PEPPER Mark in connection with merchandise that has not been approved by Plaintiff and is not authorized under the License Agreement is likely to cause confusion or to cause mistake or to deceive consumers and the public as to the source or sponsorship of such merchandise.  Consumers are likely to be misled into believing that Plaintiff licenses or authorizes the use of the DR PEPPER Mark on such merchandise and approves the quality, when it does not.

72.     Defendant's unauthorized use of the federally-registered DR PEPPER Mark in connection with soft-drink and related products outside the Territory is likely to cause confusion or to cause mistake or to deceive consumers and the public.  Consumers are likely to be misled into believing that Plaintiff has licensed or authorized the use by Defendant of the DR PEPPER Mark on such products outside the licensed territory, when it does not.

73.     Upon information and belief, Defendant's conduct is willful, deliberate, in bad faith and undertaken with knowledge of Plaintiffs' prior rights, and with full knowledge that Defendant has no right, license or authority to use the DR PEPPER Mark or any designations confusingly similar thereto, other than as expressly granted in the License Agreement.

74.     Defendant's acts are intended to reap the benefit of the enormous goodwill that Plaintiff has created in the DR PEPPER Mark and constitutes infringement of federally registered marks of Plaintiff in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

75.     Defendant's conduct has caused and is causing irreparable injury to Plaintiff and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF –
## FEDERAL UNFAIR COMPETITION AND
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

76.     Defendant's unauthorized use of the DUBLIN DR PEPPER Logo and of the phrase "Dublin Dr Pepper" in connection with soft-drink products and other merchandise is likely to cause confusion or to cause mistake or to deceive consumers and the trade as to the origin, sponsorship, or approval of such products.  Consumers are likely to be misled into believing that Plaintiff sponsors or endorses the use of the word "Dublin" in connection with DR PEPPER soft drink, when it does not.  In turn, consumers are likely to be misled into believing that the word "Dublin" denotes a different version of the DR PEPPER soft drink, or a distinct flavor, variety or other line extension of DR PEPPER soft drink, especially because DR PEPPER is sold by other bottlers with cane sugar that is the same as that produced by Defendant.  Further, by suggesting or raising the inference that "Dublin" somehow creates a different taste or flavor, and that such inference is authorized by Dr Pepper, Defendant risks the entirety of the DR PEPPER portfolio of flavors and varieties.

77.     Defendant's unauthorized use of the DR PEPPER Mark in connection with merchandise that has not been approved by Plaintiff and is not authorized under the License

Agreement is likely to cause confusion or to cause mistake or to deceive consumers and the trade as to the origin, sponsorship, or approval of such merchandise. Consumers are likely to be misled into believing that Plaintiff sponsors or authorizes the use of the DR PEPPER Mark on such merchandise and that it approves the quality, when it does not.

78. Defendant's unauthorized use of the DR PEPPER Mark in connection with soft-drink and related products outside the Territory is likely to cause confusion or to cause mistake or to deceive consumers and the trade. Consumers are likely to be misled into believing that Plaintiff licensed or authorized the use by Defendant of the DR PEPPER Mark on such products outside the Territory, when it does not.

79. Defendant's unauthorized use of the DR PEPPER Mark falsely and misleadingly represents Defendant as being legitimately authorized by Plaintiff in connection with soft-drink products and merchandise that are not authorized under the License Agreement or otherwise approved by Plaintiff, and places beyond Plaintiff's control its own reputation and goodwill.

80. Upon information and belief, Defendant's conduct is willful, deliberate, in bad faith and undertaken with knowledge of Plaintiff's prior rights, and with full knowledge that Defendant has no right, license or authority to use the DR PEPPER Mark or any designations confusingly similar thereto, other than as expressly granted in the License Agreement.

81. Defendant's acts are intended to reap the benefit of the enormous goodwill that Plaintiff has created in the DR PEPPER Mark and constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

82. Defendant's conduct has caused and is causing irreparable injury to Plaintiff and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF –
## FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))

83.    As a result of extensive promotion and use of the DR PEPPER Mark and the goods offered thereunder by Plaintiff for many years, the DR PEPPER Mark is famous throughout the United States, is highly distinctive of Plaintiff's goods and is uniquely and exclusively associated with Plaintiff.   The DR PEPPER Mark became famous long before Defendant commenced its unauthorized use of the DR PEPPER Mark as described herein.

84.    Defendant's unauthorized use of the DUBLIN DR PEPPER Logo and of the phrase "Dublin Dr Pepper" dilutes the famous DR PEPPER Mark by blurring its distinctiveness.

85.    Defendant's unauthorized use of the DR PEPPER Mark in connection with merchandise as described herein dilutes Plaintiff's famous Mark by tarnishing it.

86.    The foregoing acts were done willfully and deliberately, commencing long after the DR PEPPER Mark became famous, and with an intent to reap the benefit of Plaintiff's goodwill and to dilute the distinctiveness of and tarnish Plaintiff's marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

87.    Defendant's conduct has caused and is causing irreparable injury to Plaintiff and, unless enjoined by this Court, will continue to damage Plaintiff and the public.  Plaintiff has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF –
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

88.    Defendant's conduct, as set forth fully above, constitutes common law trademark infringement and unfair competition under the common law of the State of Texas.

89.     Defendant's conduct has caused and is causing irreparable injury to Plaintiff and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## TRADEMARK DILUTION UNDER TEXAS STATE LAW
### (Violation of Texas Business and Commerce Code § 16.29)

90.     The DR PEPPER Mark is well-known to consumers in the United States as exclusively associated with Dr Pepper and as a singular designation of the source of Dr Pepper's goods.

91.     The DR PEPPER Mark is inherently distinctive and/or has acquired distinctiveness as a result of Plaintiff's extensive promotion and use.

92.     Defendant's conduct alleged herein is likely to dilute, blur and/or tarnish the distinctive qualities of the DR PEPPER Mark in violation of Section 16.29 of the Business and Commerce Code of the State of Texas.

93.     Defendant's conduct has caused and is causing irreparable injury to Plaintiff and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT THAT DEFENDANT HAS COMMITTED
## TERMINABLE VIOLATIONS OF THE PARTIES' LICENSE AGREEMENT
### (28 U.S.C. §§ 2201 and 2202)

94.     Plaintiff and Defendant are parties to the binding License Agreement.

95.     In contravention of Paragraph 9 of the License Agreement, Defendant has sold and shipped DR PEPPER-branded products outside of the Territory without Dr Pepper's approval.

96.     In contravention of Paragraphs 8 and 20 of the License Agreement, Defendant has used an unauthorized and altered form of the DR PEPPER Mark in connection with soft drink products and other merchandise without Plaintiff's approval.

97.     In contravention of Paragraph 12 of the License Agreement, Defendant has sold unauthorized merchandise bearing the DR PEPPER Mark without Dr Pepper's approval.

98.     Paragraph 22 of the License Agreement provides that "the violation of any one or more of the terms of this Agreement by the Licensee, or the failure of Licensee . . . to comply faithfully with the duties or obligations of Licensee . . . shall entitle Licensor, at its sole option and discretion, to terminate all or part of this Agreement."

99.     Defendant's violation of one or more terms of the License Agreement and/or failure to comply faithfully with its duties constitutes a violation of the parties' License Agreement, for which license termination is the proper remedy.

<strong>SEVENTH CLAIM FOR RELIEF<br>DECLARATORY JUDGMENT THAT DEFENDANT HAS NO TRADEMARK RIGHTS<br>IN THE DUBLIN DR PEPPER LOGO OR THE ALLEGED MARK<br>"DUBLIN DR PEPPER"<br>(28 U.S.C. §§ 2201 and 2202)</strong>

100.    Defendant has a limited license to use the DR PEPPER Mark within the scope permitted by the License Agreement.

101.    Defendant does not have any license to use the DUBLIN DR PEPPER Logo or the phrase "Dublin Dr Pepper."

102.    All use by Defendant of the DR PEPPER Mark and of any DR PEPPER-formative mark inures to the benefit of Dr Pepper, as the licensor under the License Agreement.

103.    Defendant has no trademark rights in the DUBLIN DR PEPPER Logo or in the alleged mark "Dublin Dr Pepper."

## EIGHTH CLAIM FOR RELIEF
## BREACH OF CONTRACT

104.    Plaintiff and Defendant are parties to the binding License Agreement, which is a valid, enforceable contract.

105.    Plaintiff has performed and/or tendered performance of its obligations under the contract.  All conditions precedent have been performed or have occurred.

106.    Defendant has breached the contract in multiple respects including, without limitation, as follows:

107.    In contravention of Paragraph 9 of the License Agreement, Defendant has sold and shipped DR PEPPER-branded products outside of the Territory without Dr Pepper's approval.

108.    In contravention of Paragraphs 8 and 20 of the License Agreement, Defendant has used an unauthorized and altered form of the DR PEPPER Mark in connection with soft drink products and other merchandise without Plaintiff's approval.

109.    In contravention of Paragraph 12 of the License Agreement, Defendant has sold unauthorized merchandise bearing the DR PEPPER Mark without Dr Pepper's approval.

110.    Defendant's conduct has caused and is causing irreparable injury to Plaintiff and, unless enjoined by this Court, will continue to do so, and for which license termination is the proper remedy.

## NINTH CLAIM FOR RELIEF
## ATTORNEYS' FEES

111.    Because of Defendant's conduct, Plaintiff has had to retain counsel to prosecute this action against Defendant.

112.    Pursuant to United States and Texas law, Defendant is entitled to recover necessary and reasonable attorneys' fees and costs.  Specifically, the claims and causes of action pleaded herein meet the requirements for an award of attorneys' fees and costs under 15 U.S.C. 1117(a) and entitle Plaintiff to recover such fees and costs.  The claims and causes of action also meet the requirements for an award of attorneys' fees under Texas law.

113.    Through this Complaint, Plaintiff has presented this claim for attorneys' fees and costs.

114.    Plaintiff requests an award of all necessary and reasonable attorneys' fees and costs.

## APPLICATION FOR PRELIMINARY INJUNCTION

115.    Plaintiff asks the Court to enter a preliminary injunction to prevent further irreparable injury to Plaintiff pending final resolution of this lawsuit, at which time a permanent injunction will be warranted by the facts stated above.  Plaintiff asks that the Court enjoin Defendant from using an altered version of any DR PEPPER Mark, DR PEPPER trademark, selling products bearing the DR PEPPER Mark that are not authorized by Plaintiff, and selling and shipping products bearing the DR PEPPER Mark outside Defendant's Territory.

116.    Plaintiff has alleged a cause of action against the Defendant, and as indicated in this Complaint, Plaintiff has shown a probable right of recovery and likelihood of success on the merits.  Plaintiff will suffer irreparable harm without Court intervention and for which there is no adequate remedy at law.

117.    As a direct and proximate result of the Defendant's wrongful actions in this Complaint, Plaintiff will suffer injury that will be irreparable and for which no remedy at law

exists without the protections of injunctive relief.  Plaintiff is willing to post the necessary

reasonable bond to facilitate the injunctive relief requested.

118.    Wrongful, damaging conduct has occurred and will continue to occur if not

enjoined.  Defendant is intent on exploiting the Dr Pepper trademark in violation of the License

Agreement and governing trademark law and must be restrained from doing so.

119.    The threatened injury to Plaintiff outweighs any possible damage to Defendant.

All Defendant has to do is return to the agreed-to terms of operation under its License Agreement

and use the authorized DR PEPPER Mark—the same mark used by all other Plaintiff bottlers.

120.    The public interest is served by an injunction as it protects against the confusion

and deception of consumers, as described above, and it protects the substantial investment made

by Plaintiff in creating and preserving the DR PEPPER brand.

**REQUESTED RELIEF AND REQUEST FOR PERMANENT INJUNCTION**

Plaintiff requests the following relief:

A.      That Defendant and Defendant's agents, servants, attorneys, employees, any

companies owned or controlled by Defendant, and their affiliates, successors and assigns, and all

of those in active concert or participation with any of them who receive notice directly or

otherwise, be permanently enjoined and restrained from:

(i)      Using or seeking to register "Dublin Dr Pepper" or any mark that is

confusingly similar to the DR PEPPER Mark, or any other symbols or indicia associated with

Plaintiff and/or confusingly similar to the DR PEPPER Mark, or any copies, simulations,

variations, mutilated versions, or colorable imitations thereof (all of the foregoing, "Prohibited

Designations"), as, or as part of, a trademark, service mark, trade name, business name, fictitious

business name, or other identifier, or otherwise presenting such Prohibited Designations to the

public or trade including but not limited to use on labels, bottles, cans, cartons, signs, displays,

packaging, price lists, paper goods, receipts, and any other items, other than as authorized by the License Agreement or expressly permitted by Plaintiffs;

(ii)     Manufacturing, advertising, distributing, or selling any merchandise bearing the DR PEPPER Mark, or any mark confusingly similar thereto, other than as authorized by prior written consent of Plaintiff;

(iv)     Objecting to, contesting, interfering with or otherwise infringing the DR PEPPER Mark or any DR PEPPER-formative mark owned by Dr Pepper;

(v)     Unfairly competing with Plaintiff or its licensees including by trading on the recognition of the DR PEPPER Mark and Plaintiffs' goods and selling and shipping outside the lawful territory;

(vi)     Taking any action that falsely suggests or implies that Plaintiff authorizes or endorses Defendant or its goods or that suggests or implies that Defendant is in any way connected to or associated with Plaintiff, other than as a licensee of Plaintiff under the License Agreement and any succeeding license agreement between Plaintiff and Defendant;

(vii)     Selling and shipping DR PEPPER-branded products outside of the Territory defined in Exhibit A to the License Agreement; and

(viii)     Assisting any third party or requesting any third party to undertake any actions prohibited in subparagraphs (i)-(vii) above.

B.     Ordering that Defendant file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the requirements of the foregoing injunction and orders including destruction of unauthorized goods under 15 USC 1118.

C.      Declaring that the License Agreement is terminated.

D.      Declaring that Defendant has no trademark rights or other rights in the DUBLIN DR PEPPER Logo or the alleged mark "Dublin Dr Pepper."

E.      Awarding Plaintiff its costs in this civil action, including all reasonable and necessary attorneys' fees and expenses.

F.      Granting to Plaintiff such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By      */s/ Van H. Beckwith*
        Van H. Beckwith
        Jonathan R. Mureen
        Baker Botts L.L.P.
        2001 Ross Avenue, Suite 600
        Dallas, Texas 75201
        Telephone:  214-953-6500
        Facsimile: 214-953-6503
        Email:  van.beckwith@bakerbotts.com
                jon.mureen@bakerbotts.com

        Clyde M. Siebman
        Lawrence A. Phillips
        Siebman, Burg, Phillips & Smith, LLP
        Federal Courthouse Square
        300 North Travis Street
        Sherman, TX 75090
        Telephone: 903-870-0070
        Facsimile: 903-870-0066